UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

JOHNNY RIOS,

                Petitioner,                      **REPORT AND RECOMMENDATION**
     -against-                            **13 CV 4442 (MKB)(LB)**

MARK L. BRADT,

                Respondent,

-----------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Petitioner Johnny Rios filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging a 2010 conviction and sentence in the Supreme Court of the State of

New York, Kings County, for second-degree murder. The Honorable Margo K. Brodie referred

this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For

the reasons set forth below, it is respectfully recommended that the petition should be denied.

**BACKGROUND**

**I.    Trial Court Proceedings**

       According to the evidence adduced at trial, on the afternoon of November 15, 2008,

Petitioner played dominoes and drank beer at his father's home with three men he knew through

his father—Rockime Williams, Ernest Seaberry, and Joel Mendoza. (Tr. at 138:4–139:4, 140:12–

17, 314:18–19, 141:9–18.)[1] Mendoza later drove the four men to Williams's apartment at 573

Wyona Street, buying canned beer and a bottle of brandy along the way. (Id. at 143:11–145:1.)

Williams's wife, who was at the apartment upon the arrival of her husband and his guests, soon

left the apartment. (Id. at 145:2–10, 413:7–21.) The men continued playing dominoes and

---

[1] "Tr." refers to the transcript of the jury trial held in the Supreme Court of the State of New York, Kings County, from July 29, 2010, through August 4, 2010. (Resp., ECF No. 5, Ex. C.) "S." refers to the transcript of the sentencing proceeding held in the same court on August 26, 2010. (Resp., Ex. D.)

drinking at Williams's kitchen table. (Id. at 147:5–12, 156:5–6, 320:19.) Williams played music

from his game system, and haggled with Mendoza over the purchase of one of its games. (Id. at

147:5–9, 355:6–11.) When the music stopped, Williams went into his living room to inspect the

game system. (Id. at 147:23–148:2.) Petitioner and Mendoza followed, leaving Seaberry seated

at the kitchen table. (Id. at 150:24–151:1, 322:21–323:22.) While fixing the game system,

Williams glanced over his shoulder and saw Petitioner punching Mendoza's stomach. (Id. at

148:2–11.) Seaberry also saw them "wrestling." (Id. at 324:6.) Williams and Seaberry believed

Petitioner and Mendoza were play-fighting, and Williams told them to stop. (Id. at 148:4–5,

149:7, 324:11.) When Mendoza screamed for help and Williams saw blood on the floor,

Williams realized Petitioner was stabbing Mendoza. (Id. at 149:24–150:17.)

Mendoza slid to the floor and Petitioner began pacing the kitchen. (Id. at 152:7–8, 13.)

Williams then saw that Petitioner held a knife from Williams's kitchen in his hand. (Id. at 152:9–

11.) Petitioner said that Mendoza was a snitch and resumed stabbing Mendoza as he lay on the

floor, ignoring Williams's pleas to stop. (Id. at 152:14–153:3.) When Petitioner again stopped,

Williams attempted to slow Mendoza's bleeding by applying pressure to his wounds. (Id. at

153:10–17.) Petitioner then pushed Williams aside, cut Mendoza's throat, kissed two of his

fingers, and placed those fingers on Mendoza's cheek. (Id. at 153:20–22, 330:6–9.)

Petitioner threw the knife in the kitchen sink and told Williams to "[c]lean this shit up"

with a mop. (Id. at 154:1–11.) While Williams cleaned, Petitioner told Seaberry to search

Mendoza's pockets, take whatever was there, and to leave the apartment. (Id. at 154:9–10,

203:5–9.) Petitioner followed Seaberry outside. (Id. at 328:16.) Downstairs, Petitioner told

Seaberry to get into Mendoza's car, which Petitioner drove to a remote area of Brooklyn. (Id. at

328:16–20, 330:6–9.) Petitioner, accompanied by Seaberry, bought a container of gasoline from

2

a nearby gas station, soaked Mendoza's car with the gasoline, and set it on fire. (Id. at 330:17–19.) Seaberry thereafter walked to his girlfriend's house. (Id. at 331:10–11.)

Earlier, once Petitioner had left Williams's apartment, Williams called his attorney on a cell phone, reported the murder to his landlady, and directed her to call 9-1-1. (Id. at 164:5–8.) Emergency Medical Technician Lyonel Rosemond declared Mendoza dead at the scene. (Id. at 94:1–16, 99:9–20.) Responding police found Williams in his landlady's apartment with his clothing bloodied. (Id. at 111:7–112:10.) From his apartment, the police recovered and vouchered numerous beer cans, a coffee mug, a bottle of brandy, cigarette butts, and two knives from the kitchen sink. (Id. at 50:16–56:2.) Analyses of the surfaces and swabs of these items revealed Petitioner's fingerprints on the brandy bottle, Petitioner's DNA on several of the beer cans and a cigarette butt, a mixture of Petitioner's and Mendoza's DNA on the handle of one of the kitchen knives, and Mendoza's blood on the blades of both knives. (Id. at 282:15–17, 288:24–290:25, 296:25–297:7, 390:1–24, 447:3–12.) Doctor Beverly Leffers conducted an autopsy on Mendoza and determined that he had 33 stab wounds, some of which were defensive wounds and most of which could have been made by an instrument with one sharp edge, like the knives recovered from Williams's sink. (Id. at 481:2–5, 484:2–3, 485:11–14, 491:1–5, 496:18–22.) Dr. Leffers concluded that the stab wounds caused Mendoza's death. (Id. at 487:24–488:5.)

Both Williams and Seaberry told Detective James Bodnar about the killing. (Id. at 460:13–461:1, 466:5–7.) Seaberry did not tell the police that Petitioner had taken and burned Mendoza's car during his interview. (Id. at 331:17–20.) On November 17, 2008, police arrested Petitioner and Williams identified Petitioner in a line-up as the man who had stabbed Mendoza two days before. (Id. at 166:13–167:21.) The next day, Seaberry identified Petitioner in a line-up

3

as the man who killed Mendoza in Williams's apartment. (Id. at 334:15–335:3.) Petitioner was arrested the same day. (Id. at 467:14–16.)

At trial, Seaberry testified that Petitioner had taken him in Mendoza's car to a remote area in Brooklyn and, there, set fire to the car. (Id. at 330:6–331:8) Defense counsel did not object to this testimony. (Id.) When the prosecutor asked Seaberry why he did not tell the detectives about the arson, Seaberry replied that he was afraid of Petitioner, who was still at large. (Id. at 332:4–7.) Defense counsel objected and moved to strike Seaberry's response. (Id. at 332:8–15.) The state court overruled the objection, stating that Seaberry's motivation for not telling the detectives about the arson was based on his opinion, but offered to strike the testimony "about not telling the detectives about . . . the fire;" defense counsel declined the offer. (Id. at 332:16–22.) On cross-examination, Seaberry testified that he told the police only that Petitioner had driven away from Williams's apartment, omitting the fact that he accompanied Petitioner. (Id. at 367:6–10.) Defense counsel argued in closing that Seaberry's omission undermined Seaberry's credibility, and put forth the theory that Williams had murdered Mendoza because of their disagreement about giving Mendoza one of his videogames. (Id. at 517:13–14.)

The state court charged the jury members, instructing them not to consider Seaberry's testimony about the arson as evidence that Petitioner "had a propensity [] or predisposition to commit the murder charged . . . ." (Id. at 581:20–582:2.) After the jury delivered a guilty verdict, but before sentencing, defense counsel moved for a mistrial and to set aside the verdict, arguing in part that the car-torching testimony constituted inadmissible evidence of uncharged crimes. (S. at 6:5–7:19.) While noting that the prosecutor did not make an *in limine* motion before offering that testimony, the court denied the motion for mistrial, stating, "[S]ince I offered the defense an

4

opportunity to strike it, and they chose not to, I don't think it's grounds for setting aside the verdict, being that, I believe, in essence, the testimony would have been admissible, in any event" because "it completes the narrative." (S. at 9.) The trial judge sentenced Petitioner to twenty-five years to life imprisonment, and decided that, as a matter of law, his sentence "must" run consecutive to the time Petitioner owed on parole from a prior conviction. (S. at 18:25–19:6.)

## II.    Procedural History

Petitioner appealed his conviction to the Appellate Division of the New York Supreme Court for the Second Judicial Department, and raised three claims: (1) the state trial court violated his right to due process by admitting evidence of an uncharged crime he allegedly committed; (2) trial counsel was ineffective for failing to preserve that due process argument; and (3) the sentencing court relied on a misapprehension of the law when it ran Petitioner's sentence consecutively to a prior undischarged sentence imposed by a Pennsylvania court. (Resp., Ex. E (Appellate Br.).) The Appellate Division affirmed the conviction on June 20, 2012, but modified Petitioner's sentence. (Pet.; Resp., Ex. G ("App. Div. Dec.").) Regarding the merits of the appeal, the Appellate Division determined that "[t]he defendant's [due process argument was] unpreserved for appellate review," and, in any event, was without merit, but that the trial court "incorrectly believed that it was required, as a matter of law, to direct that the defendant's sentence run consecutively to a certain undischarged sentence when in fact, under the circumstances, the [trial] court had discretion to direct that the defendant's sentence run either concurrently with or consecutively to that undischarged sentence." (App. Div. Dec.) Petitioner sought leave from the Court Appeals to appeal only the dismissal of his due process claim. (Resp., Ex. H ("Leave App.").) The Court of Appeals denied Petitioner's leave request. (Id., Ex. J.)

5

### III.    The Instant Habeas Petition

On July 31, 2013, Petitioner applied *pro se* for a writ of habeas corpus based on the same three grounds he raised on appeal. Petitioner also separately filed a motion for a stay and, on April 24, 2014, a motion to vacate his conviction in state court based on six new claims that requested an order for DNA testing of certain autopsy evidence. (Stay Mot., ECF No. 6; Opp'n, ECF No. 8, at 1–2, Attach. 1.) Respondent's counsel's affidavit in opposition to the instant petition argues that Petitioner's due process claim is procedurally barred by the independent and adequate state ground doctrine; Petitioner raises claims that are unexhausted, moot, and/or abandoned; and a stay of the petition to permit exhaustion of Petitioner's ineffective assistance claims would be futile. (Resp. at 1–2.) On February 2, 2015, the Court denied Petitioner's motion for a stay. (ECF No. 10.)[2]

## DISCUSSION

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of

---

[2] Petitioner also made a request in his petition for a stay and abeyance "to file a [Section] 440.10 [motion to exhaust his] ineffectiveness of trial counsel, and to "submit a Writ of Error Coram Nobis with the [] Second Department [] [f]or ineffectiveness of Appellate Counsel for neglecting to argue more relevant and prese[r]ved issues and for not extensively including in its appeal brief that fact of trial counsel's ineffectiveness." (Pet. at 6–8, 19.) However, as explained in the Court's order denying Petitioner's stay motion, Petitioner has not provided good cause for his failure to exhaust his ineffective assistance claims.  (See ECF No. 10.) Additionally, a stay is not appropriate because Plaintiff's unexhausted claims lack merit. Petitioner's ineffective assistance of trial counsel claim would be denied as procedurally defaulted. See Part B, *infra*. As to his appellate counsel claim, Petitioner does not identify what arguments he believes appellate counsel failed to highlight in the appellate brief. As to the ineffective assistance of trial counsel claim, appellate counsel devoted only one paragraph to the issue in the brief, but spent the prior nine pages explaining what prejudice flowed from trial counsel's failure to contemporaneously object to the admission of uncharged crimes testimony. (Resp. Ex. E at 19–28.) Regardless, "there can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless." Rolling v. Fischer, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006). Because, as discussed below, Petitioner's trial counsel claim is without merit, his ineffective assistance of appellate counsel claim is likewise without merit. See id.

6

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (as amended by

AEDPA). Under the AEDPA, the reviewing court may grant a habeas petition only if the

petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court

proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "'adjudication on the merits' is one that '(1) disposes of the claim on

the merits, *and* (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d

Cir. 2007) (citation omitted and emphasis in the original). "[R]eview under § 2254(d)(1) is

limited to the record that was before the state court that adjudicated the claim on the merits."

Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

A state court decision is "contrary to" clearly established federal law if "the state court

reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when

presented with 'facts that are materially indistinguishable from a relevant Supreme Court

precedent,'" the state court arrived at an opposite result. Evans v. Fischer, 712 F.3d 125, 132 (2d

Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an

"unreasonable application" of clearly established federal law if "the state court identifies the

correct governing legal principle from [Supreme Court] decisions but unreasonably applies that

principle to the facts of the prisoner's case." Williams, 529 U.S. at 407. The Court cautions,

however, that "an *unreasonable* application of federal law is different from an *incorrect*

application of federal law." Id. at 412 (emphasis in original); see also Grayton v. Ercole, 691

F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of

7

the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Federal habeas review is limited to whether the petitioner is in custody "in violation of the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a); see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). "Federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); see also Howard v. Walker, 406 F.3d 114, 121 (2d Cir. 2005) ("A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court."); Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law . . . .").

## II.     Exhaustion and Procedural Bar

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts state-court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 275–76 (1971) ("[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."). "The purpose of the exhaustion requirement is to ensure that a state court is given the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005) (quoting Picard, 404 U.S.

at 275). Consistent with this principle, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." Picard, 404 U.S. at 276 (citation omitted).

Federal courts also have no authority to review state court decisions that rest upon independent and adequate state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment' . . . ." (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing Coleman, 501 U.S. at 729); accord Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). Federal habeas review of a claim is foreclosed when the state court has expressly relied on the petitioner's procedural default as an independent and adequate state law ground. Green, 414 F.3d at 294; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). A petitioner may, nevertheless, obtain federal habeas review of a procedurally-defaulted claim if petitioner demonstrates either "cause for the default and prejudice" or that "failure to consider the claims will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

III.   **Petitioner's Claims**

    **A. Due Process Claim**

Petitioner argues that his conviction should be vacated because the state court violated his due process right to a fair trial by admitting evidence of uncharged crimes, *i.e.*, Seaberry's testimony that Petitioner took Seaberry to a remote area of Brooklyn and set Mendoza's car on fire. (Pet. at 6, 18.) However, Petitioner's due process claim is procedurally barred. In dismissing

9

that claim, the Appellate Division explicitly relied upon Section 470.05(2) of the New York

Criminal Procedure Law, the contemporaneous objection rule, stating that the claim was

"unpreserved for appellate review . . . and, in any event, without merit . . . ."[3] (App. Div. Dec.) It

is well established that the application of Section 470.05(2) is an independent and adequate state

procedural ground that prohibits federal habeas review if explicitly invoked by the state court,

regardless of an alternative holding on the merits. See Mullings v. Laffin, No. 13-CV-139

(KAM), 2014 U.S. Dist. LEXIS 109973, at *13 (E.D.N.Y. Aug. 8, 2014) (finding that claim

Appellate Division determined was "unpreserved for appellate review and, in any event, . . .

without merit" could not be reviewed by federal court);[4] see also Garcia v. Lewis, 188 F.3d 71,

79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its

contemporaneous objection rules.") (citations omitted).

Although a showing of cause and prejudice or some fundamental miscarriage of justice

may permit federal court review of a procedurally-defaulted habeas claim, Coleman, 501 U.S. at

750, Petitioner does not establish either. To demonstrate "cause," petitioner must show "that

'some objective factor external to the defense impeded counsel's efforts' to raise the claim in

state court." McCleskey v. Zant, 499 U.S. 467, 493–94 (1991) (quoting Murray v. Carrier, 477

U.S. 478, 488 (1986)). Those factors include "interference by officials that makes compliance

with the State's procedural rule impracticable," "a showing that the factual or legal basis for a

claim was not reasonably available to counsel," or "constitutionally [i]neffective assistance of

counsel." Id. at 494 (quotation marks and citations omitted). A claim of ineffective assistance

"must be presented to the state courts as an independent claim before it may be used to establish

---

[3] This rule requires "at the very least, that any matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." N.Y. Crim. Proc. Law § 470.05(2) (McKinney 2014). Here, Petitioner's trial counsel failed to contemporaneously object to Seaberry's testimony regarding setting Mendoza's car on fire.
[4] The Clerk of Court is directed to send Plaintiff copies of the attached unreported cases cited herein.

cause for a procedural default." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (quoting Murray, 477 U.S. at 489) (quotation marks omitted).

Here, Petitioner mentions his independent claim that his trial counsel was ineffective for failing to contemporaneously object to the uncharged crimes evidence.  (See Pet.) However, Petitioner cannot rely on his ineffective assistance claim to show cause for the procedural default of his due process claim because, as discussed below, the ineffective assistance claim itself is procedurally defaulted and Petitioner has not satisfied the cause and prejudice standard with respect to that claim. See Edwards, 529 U.S. at 453. Therefore, Petitioner's claim that he was denied his due process right to a fair trial is procedurally barred from federal habeas review.

Even if it were not procedurally barred, the claim is without merit.[5] "[I]t is not enough for a habeas petitioner to show that [] evidence of uncharged crimes was erroneously admitted under New York evidentiary law"—the admission must have violated a constitutional right. Augugliaro v. Bradt, No. 08-cv-01548 (NG), 2014 U.S. Dist. LEXIS 145845, at *26 (E.D.N.Y. Oct. 6, 2014). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). To amount to a deprivation of due process, the admission of evidence in question, when evaluated in the context of the record as a whole, must be "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would otherwise have existed on the record without it." McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 73 (2d Cir. 2011) (citation omitted).

---

[5] The Appellate Division decided Petitioner's due process claim on the merits as an alternative holding. Its decision that the claim lacked merit is entitled to deferential review under the AEDPA. See Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2005) (granting AEDPA deference to state court's alternative holding on the merits).

11

Here, the Appellate Division determined that the admission of Seaberry's testimony about setting Mendoza's car on fire did not rise to the level of a due process violation. When viewed on the whole, the record reveals sufficient independent evidence to conclude that Petitioner was guilty of second-degree murder: two eye-witness statements from individuals who knew Petitioner, Petitioner's DNA on the handle of the murder weapon, DNA and fingerprint evidence that places Petitioner in Williams's apartment contemporaneous to Mendoza's death, and the medical examiner's report that Mendoza had defensive wounds and died from multiple stab wounds. Moreover, the Court instructed the jury not to consider the testimony regarding Mendoza's car as propensity or predisposition evidence and, in that limited scope, that testimony merely explained why Seaberry did not speak to the police until the day after Mendoza's murder. (Tr. at 581:20–582:2.) Therefore, even if the admission of the testimony regarding setting Mendoza's car on fire was erroneous as a matter of state law, no constitutional violation resulted because that evidence neither provided "the basis for [Petitioner's murder] conviction" nor did it "remove a reasonable doubt that would have existed . . . without it."

For the reasons stated above, Petitioner's due process claim regarding the admission of the testimony regarding setting Mendoza's car on fire should be denied as procedurally barred. In the alternative, Petitioner's claim should be denied because the Appellate Division's denial of that claim was not contrary to or an unreasonable application of clearly established Federal law.

**B. Ineffective Assistance of Trial Counsel Claim**

Petitioner argued to the Appellate Division that his trial counsel provided ineffective assistance. (Appellate Br.) Although the Appellate Division affirmed the trial court's decision without specifically addressing whether trial counsel was ineffective, (App. Div. Dec.), it is presumed to have denied the claim on the merits. See Journet v. Coombe, 567 F. Supp. 503, 505

12

(S.D.N.Y. 1983) (finding that Appellate Division's affirmance without opinion decided petitioner's ineffective assistance of trial counsel claim on the merits); see also Quintero v. Heath, No. 10 Civ. 8709 (CS)(LMS), 2012 U.S. Dist. LEXIS 144028, at *28 (S.D.N.Y. Aug. 17, 2012) (deeming state appellate court's summary affirmance, discussing some issues while remaining silent on petitioner's ineffective assistance claim, as a denial "on the merits" of all claims).[6] Petitioner did not argue ineffective assistance in his letter seeking leave to the New York Court of Appeals. (Leave App.) He therefore abandoned that claim. See N.Y. Ct. App. R. 500.11(f) ("A party shall be deemed to have abandoned any argument made in the intermediate appellate court briefs not addressed or reserved in the letter submission to this Court.").

If Petitioner attempted to exhaust his ineffective assistance claim, the state court would dismiss it as procedurally defaulted. See N.Y. Crim. Proc. Law § 440.10(2)(a) (precluding review through collateral motion to vacate of claim that was decided on the merits on direct appeal), (c) (precluding review of claim that defendant unjustifiably failed to raise on direct appeal actually perfected by him). That claim is therefore considered procedurally defaulted. See Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir. 1991) (deeming exhausted but denying as procedurally defaulted claims the state court would clearly hold as procedurally barred). Although a showing of cause and prejudice or actual innocence permits review of a procedurally-defaulted claim, neither are alleged by Petitioner or supported by the record. As Petitioner has not demonstrated the requisite cause and prejudice to overcome the procedural default of his ineffective assistance claims, or that the Court's failure to consider these claims will result in a

---

[6] It is presumed that the state court adjudicated the claim on the merits because there is no procedural basis upon which the Appellate Division can deny an ineffective assistance of trial counsel claim, which need not be exhausted before the trial court. See Harrington, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

miscarriage of justice, Petitioner's ineffective assistance of trial counsel claim should be denied as procedurally barred.

Even if the claim was not procedurally barred, it is without merit. To establish ineffective assistance of counsel, a petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms, and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 688, 693 (1984)) (internal quotation marks omitted).[7] A federal court's scrutiny of an ineffective assistance claim is "highly deferential[;] . . . every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . ." Bierenbaum v. Graham, 607 F.3d 36, 50–51 (2d Cir. 2010) (alteration in original) (quoting Strickland, 466 U.S. at 689).

Petitioner alleges that his trial counsel was ineffective "[f]or not timely objecting to the prosecut[o]r's introduction of an uncharged crime," namely, Seaberry's testimony regarding setting fire to Mendoza's car. (Pet. at 18.) As discussed, however, even if trial counsel preserved the issue for appellate review, the introduction of Seaberry's testimony did not "remove a reasonable doubt that would have existed . . . without it." Petitioner therefore fails to establish prejudice, *i.e.*, that but for counsel's alleged errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 688, 694. Accordingly, even if reached on the merits, Petitioner's claim that his counsel provided ineffective assistance by failing to

---

[7] The Second Circuit has held that the more generous New York constitutional standard for effective assistance of counsel was not contrary to the federal Strickland standard. Rosario v. Ercole, 601 F.3d 118, 125–26 (2d Cir. 2010). Therefore, the application of the New York constitutional standard is not *per se* an unreasonable application of federal law. Id. at 126.

14

contemporaneously object to the introduction of uncharged crime evidence should be denied because the Appellate Division's decision denying that claim was not contrary to or an unreasonable application of clearly established Federal law.

### C. Sentencing Claim

Petitioner also revives his Appellate Division argument that the sentencing court misunderstood the extent of its discretion in determining whether his sentence would run consecutive to or concurrently with a sentence he received for a previous Pennsylvania conviction. However, the Appellate Division agreed that the sentencing court erred and vacated Petitioner's sentence. The sentencing court resentenced Petitioner, explicitly declining to exercise its discretion to run Petitioner's sentence concurrent with Petitioner's undischarged sentence. Because Petitioner has already obtained the relief sought regarding his sentencing claim, that claim is moot.

Moreover, such claims are not cognizable under federal habeas law. Habeas relief is available only when a sentence imposed falls outside the range prescribed by law. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). "[T]here is no constitutionally cognizable right to concurrent, rather than consecutive, sentences." United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002); see also Ashby v. Senkowski, 269 F. Supp. 2d 109, 115 (E.D.N.Y. 2003) ("A challenge to the imposition of consecutive sentences fails to present an issue of constitutional dimension if the sentence falls within the range prescribed by state law."). Here, Petitioner's prison sentence of twenty-five years to life falls within the statutorily prescribed range for the Class A felony of Murder in the Second Degree under New York law. N.Y. Penal Law §§ 70.00(2) (setting the maximum term of imprisonment for Class A felony to life imprisonment), 125.25 (categorizing Second Degree Murder as a Class A-I felony) (McKinney

2010). Furthermore, New York state law grants the Supreme Court discretion to direct that a defendant's sentence run concurrently with or consecutively to an undischarged sentence. N.Y. Penal Law § 70.25(4). The resentencing court did not abuse that discretion when it directed that Petitioner's sentence run consecutively to his undischarged sentence. See id.

Because the sentencing court's error has been redressed and Petitioner's new sentence falls within the range prescribed by state law, Petitioner's sentencing claim does not present a federal constitutional issue for habeas corpus review.

## CONCLUSION

Accordingly, it is respectfully recommended that Petitioner's request for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because Petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Slack v. McDaniel, 529 U.S. 473 (2005) (discussing the standard for issuing a certificate for appealability); see also Lucidore v. N.Y State Div. of Parole, 209 F.3d 107, 112–13 (2d Cir. 2000). It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. U.S., 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v.

Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: March 19, 2015
        Brooklyn, New York

17