UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOHNNY RIOS,

                           Petitioner,          **MEMORANDUM & ORDER**
                                                  13-CV-4442 (MKB) (LB)

        v.

MARK L. BRADT, *Superintendent of Attica*
*Correctional Facility*

                           Respondent.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Petitioner Johnny Rios, proceeding *pro se*, and currently incarcerated at Great Meadows[1]

Correctional Facility brings the above-captioned petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his

federal constitutional rights.  (Pet. for Writ of Habeas Corpus ("Pet."), Docket Entry No. 1; Let.

Notifying Court of New Address for Petitioner, Docket Entry No. 9.)  Petitioner's claims arise

from a judgment of conviction after a jury trial in the Supreme Court of the State of New York,

Kings County (the "Trial Court"), for murder in the second degree.  (Tr. of Proceedings before

the Hon. Joel M. Goldberg, dated July 29, 2010 ("Tr."), 611:19–24, annexed to Resp. to Order to

Show Cause as Ex. C, Docket Entry Nos. 5-2–4.)  The Trial Court sentenced Petitioner to a term

of twenty-five years to life imprisonment and imposed the sentence to run consecutively to the

unexpired sentence of a prior conviction.  (Tr. of Sentencing before the Hon. Joel M. Goldberg,

dated Aug. 26, 2010 ("Sen'g Tr."), annexed to Resp. to Order to Show Cause as Ex. D, Docket

---

[1] At the time Petitioner filed the petition he was incarcerated at Attica Correctional
Facility.  (Pet. 1.)

Entry No. 5-4.)  Petitioner appealed his conviction to the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"), on the grounds that his trial counsel was ineffective, the Trial Court violated his due process rights when it admitted evidence of uncharged crimes against him,  and that the Trial Court misunderstood the law when it sentenced him to a consecutive term of imprisonment.  (Pet'r's App. Div. Br. ("Pet'r's App. Br."), annexed to Resp. to Order to Show Cause as Ex. E, Docket Entry No. 5–4.)  The Appellate Division denied his due process and ineffective assistance of counsel claims but remanded the case for resentencing, having found that the Trial Court was mistaken in its understanding that it was required to sentence Petitioner to a term of imprisonment consecutively to the prior undischarged sentence.  (App. Div's Decision & Order dated June 20, 2012 ("App. Div. Decision"), annexed to Resp. to Order to Show Cause as Ex. G, Docket Entry No. 5-4.)

On November 4, 2014, the Court referred the petition to Magistrate Judge Lois Bloom for a report and recommendation.  (Order dated Nov. 4, 2014.)  By report and recommendation dated March 19, 2015, Judge Bloom recommended that the Court deny the petition and deny a certificate of appealability (the "R&R").  (R&R, Docket Entry No. 11.)

Petitioner objected to the R&R "on the grounds of actual innocence."  (Pet'r's Obj. to R&R ("Pet'r's Obj."), Docket Entry No. 12.)  In addition to objecting to the R&R, Petitioner also submitted several new claims in a separate petition.  (*See* 28:2254 Pet. 2–3 ("Obj. Pet."), annexed to Pet'r's Obj. as Ex. 2, Docket Entry No. 12.)  Petitioner's new claims raised in opposition to the R&R are: (1) ineffective assistance of trial counsel based on trial counsel's: (i) failure to object to the introduction of deoxyribonucleic acid ("DNA") evidence, (ii) failure to present critical DNA evidence, (iii) failure to object to the admission of two knives into evidence, (iv) failure to investigate and to object to prosecutorial misconduct during the Assistant

2

District Attorney's (the "ADA") summation, and (v) failure to call an expert witness; (2) the

Trial Court's denial of his motion pursuant to New York Criminal Procedure Law § 440.10

("Section 440.10") requesting DNA testing; (3) ineffective assistance of appellate counsel; and

(4) fundamental miscarriage of justice. (*Id.*)  Petitioner also requests discovery. (*Id.*)

For the reasons discussed below, the Court adopts the R&R and, having considered

Petitioner's new claims and construing them as an amendment to the petition, denies the petition

and declines to grant a certificate of appealability.

## I.   Background

### a.   Factual background

The Court assumes familiarity with the facts of the case as set forth in detail in the R&R

and provides only a summary.

### i.   Trial

Petitioner's jury trial began on July 29, 2010.  (Tr. 1.)  He was represented by attorney

Jesse Young, Esq. ("Trial Counsel").  (*Id.*)  The evidence presented at trial established that on

November 15, 2008, Petitioner, along with Ernest Seaberry and Joel Mendoza, went to Rockime

Williams' apartment at 573 Wyona Street, Brooklyn, New York.  (*Id.* at 138:3–5, 144:23–145:5).

The four men played dominos while drinking alcohol.  (*Id.* at 146:1–15.)  Williams played music

from his game system and discussed giving Mendoza one of his games.  (*Id.* at 147:5–25.)  When

the music suddenly stopped, Williams got up to investigate.  (*Id*. at 147:22–148:5.)  At that point,

Williams, together with Seaberry, who was still watching from his seat at the table, noticed

Petitioner and Mendoza engaged in what they thought to be play fighting.  (*Id.* at 148:1–5,

323:21–324:11.)  Williams told the pair to stop playing in his house, (*id.* at 149:7–11), but then

noticed blood and heard Mendoza scream for help, (*id.* at 149:24–150:14).  Williams saw

Petitioner stabbing Mendoza in the stomach and chest and tried to push him off of Mendoza.  (*Id.*

at 151:19–152:4.)  He noticed that Petitioner was using a knife from his kitchen to stab Mendoza. (*Id.* at 152:7–11.)  Petitioner cut Mendoza's throat, and kissed two of his fingers and put them to Mendoza's cheek.  (*Id.* at 153:19–22, 324:23–24.)  He then instructed Williams to get the mop and clean up and threw the knife in the sink.  (*Id.* at 154:1–11.)

Seaberry then left the apartment and Petitioner followed him.  (*Id.* at 326:16–19.) Petitioner instructed Seaberry to get into Mendoza's car with him, which he did.  (*Id.* at 18–22.) Seaberry testified that Petitioner drove the pair to a remote area where he stopped to get gas and torched the vehicle.  (*Id.* at 330:6–19.)  Trial Counsel did not object to this testimony.  (*Id.*) When the prosecutor asked Seaberry why he neglected to tell the detectives about the arson, Trial Counsel objected.  (*Id.* at 332:4–8.)  The Trial Court overruled the objection, (*id.* at 332:9), and Seaberry responded that he had not done so because he was afraid of Petitioner, who was still at large, (*id.* at 332:10–13).  The Trial Court offered to strike the testimony about not telling the detectives about the fire, (*id.* at 332:8–19), but Trial Counsel declined the offer to strike, (*id.* at 332:20–24).

After Petitioner and Seaberry left the apartment, Williams called his attorney from his cellular telephone and reported the murder to his landlady, directing her to call the police.  (*Id.* at 163:24–164:8.)  Emergency Medical Technician Lyonel Rosemond responded to the call and, upon arriving, pronounced Mendoza dead.  (*Id.* at 94:1–16, 99:1–20.)  Responding police officers found Williams in his landlady's apartment and described him as visibly intoxicated and very nervous.  (*Id.* at 112:11–113:14.)  In addition to photographing the scene, officers collected beer cans, a liquor bottle, an ashtray, cigarette butts, a coffee mug, and two knives.  (*Id.* at 50:16–57:2.)

Analyses of the items collected from Williams' apartment revealed Petitioner's

fingerprints on the liquor bottle, Petitioner's DNA on several of the beer cans and a cigarette butt, a mixture of Petitioner's and Mendoza's DNA on the handle of one of the kitchen knives, and Mendoza's blood on the blades of both knives.  (*Id.* at 282:15–17, 288:24–290:25, 296:25–297:7, 390:1–24, 447:3–12.)  Doctor Beverly Leffers conducted an autopsy of Mendoza and determined that he had thirty-three stab wounds, most of which could have been made by an instrument with one sharp edge and one blunted edge, like the knives recovered from Williams' sink.  (*Id* at 481:2–5, 484:2–3, 491:1–5, 496:18–22.)  Dr. Leffers concluded that stab wounds to the head, body, and extremities injured the lungs, heart, aorta, and liver and caused Mendoza's death.  (*Id.* at 487:24–488:5.)

In his closing argument, Trial Counsel argued that Seaberry's omission — failing to tell the police that Petitioner had burned Mendoza's vehicle — undermined his credibility.  (524:2–525:4.)  In the jury charge, the Trial Court instructed the jury that Seaberry's testimony about Petitioner burning the car "must not be considered for the purpose of proving that [Petitioner] had a propensity to or predisposition to commit the murder charged in this case."  (*Id.* at 581:20–582:2.)

After the jury found Petitioner guilty but before sentencing, Trial Counsel moved for a mistrial on the basis that the car-torching testimony constituted inadmissible evidence of uncharged crimes.  (Sen'g Tr. 6:5–7:19.)  The Trial Court found that it was too late to seek a mistrial but considered the argument as part of the motion to set aside a verdict.  (*Id.* at 8:21–24.)  In considering the argument on a motion to set aside the verdict, the Trial Court determined that while the prosecution did not proceed by way of a *Molineux* hearing,[2] the testimony would have

---

[2]  Pursuant to *People v. Molineux*, 168 N.Y. 264 (1901), a *Molineux* hearing is conducted to determine whether evidence of past crimes, wrongs, or other acts committed by a defendant are admissible against the defendant at trial.

been admitted because it "completes the narrative." (*Id.* at 9:1–11.)  The Trial Court also found that since Trial Counsel was given an opportunity to strike the testimony and chose not to, and because it was admissible anyway, Seaberry's testimony did not provide an adequate ground to set aside the verdict.  (*Id.* at 9:1–11.)

The Trial Court sentenced Petitioner to twenty-five years to life imprisonment and decided that, as a matter of law, his sentence "must" run consecutively to the undischarged sentence on a prior conviction.  (*Id.* at 18:25–19:6.)

### ii.   Direct appeal

Petitioner filed a direct appeal arguing that: (1) the Trial Court violated his right to due process by admitting evidence of an uncharged crime he allegedly committed, (2) Trial Counsel was ineffective for failing to preserve that due process argument, and (3) the Trial Court erred when it imposed Petitioner's sentence consecutively to a prior undischarged sentence imposed by a Pennsylvania Court due to a misapprehension that the penal law mandated consecutive sentencing.  (Pet'r's App. Br.)

On June 20, 2012, the Appellate Division held that Petitioner's "contention that he was deprived of his due process right to a fair trial by the admission of certain uncharged crime evidence is unpreserved for appellate review and, in any event, without merit."  (App. Div. Decision.) (citations omitted).  In the same decision, the Appellate Division determined that the Trial Court sentenced Petitioner based on an incorrect belief that it was required to impose Petitioner's sentence consecutively to an undischarged sentence.  (*Id.*)  The Appellate Division remitted the matter to the Trial Court for resentencing.  (*Id.*)

Petitioner sought leave to appeal the dismissal of his due process claim, but not his ineffective assistance of counsel claim, to the New York Court of Appeals.  (Appl. for Permission to Appeal to the Court of Appeals ("Leave Appl."), annexed to Resp. to Order to Show Cause as

Ex. H, Docket Entry No. 5-4.)  The Court of Appeals denied leave to appeal on August 21, 2012.

(N.Y. Ct. of Appeals Order Den. Leave dated Aug. 21, 2012 ("Order Den. Leave Appl."),

annexed to Resp. to Order to Show Cause as Ex. J, Docket Entry No. 5-4.)

### iii.   The habeas petition

On July 31, 2013, Petitioner applied *pro se* for a writ of habeas corpus on the same

grounds as raised on Direct Appeal.  (Pet.)  In opposing the petition, Respondent argues that

(1) Petitioner's due process claim is procedurally barred by the independent and adequate state

ground doctrine; (2) Petitioner's ineffective assistance of counsel claim is unexhausted since it

was not raised in his leave application to the New York Court of Appeals; and (3) any claim

based on the Trial Court's error in sentencing Petitioner is moot, has been abandoned, and is not

cognizable in federal habeas.  (Resp. to Order to Show Cause ("Resp. Opp'n"), Docket Entry No.

5.)

On April 24, 2014, Petitioner moved to vacate his conviction pursuant to C.P.L. § 440.10

alleging: (1) ineffective assistance of trial counsel, (2) a *Brady* violation,[3] (3) knowing use of

false testimony by the prosecutor, (4) prosecutorial misconduct, (5) fraud upon the Trial Court

committed by the prosecutor, and (6) his innocence.[4]  (Mot. to Stay, Docket Entry No. 6;

Decision and Order dated Sept. 9, 2014 ("Section 440 Decision"), annexed to Resp. in Opp'n to

---

[3]  "The basic rule of *Brady* is that "[t]he Government has a constitutional duty to disclose evidence favorable to an accused when such evidence is 'material' to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  A *Brady* claim requires a showing that a prosecutor withheld material evidence. *See United States v. Hsu*, 669 F.3d 112, 117 & n.2 (2d Cir. 2012) ("Evidence is not 'suppressed' within the meaning of *Brady* if the defendant or his attorney . . . knew . . . of the essential facts permitting him to take advantage of that evidence." (citation omitted)).

[4]  By letter filed on March 31, 2014, Petitioner moved for a stay while he pursued CPL § 440.10 motion to vacate the judgment and *coram nobis* motions.  (Mot. to Stay,  Docket Entry No. 6.)  On February 2, 2015, the Court denied Petitioner's motion for a stay. (Order dated May 2, 2015, Docket Entry No. 10.)

Mot. to Stay as Ex. 1, Docket Entry No. 8.)  Petitioner also sought an order directing DNA testing and retesting of certain evidence.  (Section 440 Decision 1.)  On September 9, 2014, the court denied Petitioner's motion in all respects without a hearing (the "Section 440 Decision"). (Section 440 Decision 24.)  On September 24, 2014, Petitioner filed for leave to appeal the Section 440 Decision to the Appellate Division.  (440 Leave Appl., annexed to Pet'r's Obj. as Ex. 6, Docket Entry No. 12.)  On February 25, 2015, the Appellate Division denied leave to appeal the Section 440 Decision.  *People v. Rios*, 2015 N.Y. Slip Op. 64966, 2015 WL 777350 (App. Div. Feb. 25, 2015).

On March 3, 2015, Petitioner filed for a writ of error *coram nobis*.  (*Error Coram Nobis Appl.*, annexed to Pet'r's Obj. as Ex. F, Docket Entry No. 12-8.)  On October 14, 2015, the Appellate Division concluded that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel" and denied his petition for a writ of error *coram nobis.  People v. Rios*, 17 N.Y.S.3d 659, 659 (App. Div. 2015)

**b.  The R&R**

Judge Bloom recommended that the Court deny the petition because Petitioner's due process claim, regarding the admission of the testimony about Petitioner setting Mendoza's car on fire, and his ineffective assistance of Trial Counsel claims are procedurally barred and the findings of the Appellate Division were not contrary to or an unreasonable application of clearly established federal law, (R&R 12, 14–15), and because his sentencing claim is not cognizable under federal habeas law.  (R&R 15.)

**i.  Due process claim**

In the petition, Petitioner alleged that the Trial Court violated his due process right to a fair trial by admitting evidence of uncharged crimes — specifically, Seaberry's trial testimony that Petitioner took Seaberry to a remote area of Brooklyn and set Mendoza's car on fire.  (Pet. 6,

18; Tr. 330:6–19.)

Judge Bloom found that the "independent and adequate" state law grounds doctrine bars federal habeas review of Petitioner's due process claim.  (R&R 9–10.)  Judge Bloom explained that "the Appellate Division explicitly relied upon [s]ection 470.05(2) of the New York Criminal Procedure Law, the contemporaneous objection rule" and that "it is well established that the application of [s]ection 470.05(2) is an independent and adequate state procedural ground that prohibits federal habeas review."  (*Id.* at 10 (first citing *Mullings v. Laffin*, No. 13-CV-139, 2014 WL 3897566 at *4 (E.D.N.Y. Aug. 8, 2014); and then citing *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999)).)

Judge Bloom also noted that, although a petitioner may obtain federal habeas review of a procedurally defaulted claim upon a showing of cause and prejudice or some fundamental miscarriage of justice, "Petitioner has not satisfied the cause and prejudice standard."  (*Id.* at 11 (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).)  She concluded that Petitioner's claim, that he was denied his due process right to a fair trial, was therefore procedurally barred.  (*Id.*)

In the alternative, Judge Bloom considered the claim and determined that it was without merit.  (*Id.* at 11–12.)  The Appellate Division determined that the admission of Seaberry's testimony about setting Mendoza's car on fire did not rise to the level of a due process violation.  (App. Div. Decision.)  Judge Bloom explained that a habeas petitioner must show not only that evidence of uncharged crimes was erroneously admitted under New York evidentiary law but must also show that the admission violated a constitutional right.  (R&R 11 (quoting *Augugliaro v. Bradt*, No. 08-CV-01548, 2014 2014 WL 5093849, at *9 (E.D.N.Y. Oct. 6, 2014).))  In applying the relevant standard, that

> [t]o amount to a deprivation of due process, the admission of evidence in question, when evaluated in the context of the record as

> a whole, must be 'sufficiently material to provide the basis for
> conviction or to remove a reasonable doubt that would otherwise
> have existed on the record without it,

(R&R 11 (quoting *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011))), Judge Bloom concluded that the record contains sufficient independent evidence to convict Petitioner of second-degree murder and therefore the admission of Seaberry's testimony about setting Mendoza's car on fire did not result in a violation of constitutional law.[5]  (R&R 12.)  Accordingly, Judge Bloom recommended that the Court deny Petitioner's due process claim.  (*Id.*)

### ii.  Ineffective assistance of Trial Counsel claim

Petitioner also reasserted his claim of ineffective assistance of Trial Counsel in his petition.  (Pet. 6, 16.)  Petitioner argued to the Appellate Division that Trial Counsel provided ineffective assistance.  (Pet'r's App. Br.)  Judge Bloom explained that although the Appellate Division did not specifically address whether trial counsel was ineffective, the Appellate Division is presumed to have denied the claim on the merits since it affirmed the Trial Court's decision.  (R&R 12–13 (first citing *Journet v. Coombe*, 567 F. Supp. 503, 505 (S.D.N.Y. 1983); and then citing *Quintero v. Heath*, No. 10-CV-8709, 2012 WL 4747181, at *8 (S.D.N.Y. Aug. 20, 2012).))

Judge Bloom determined that this claim is procedurally defaulted because Petitioner did not argue ineffective assistance of Trial Counsel in his letter seeking leave to the New York Court of Appeals.  (R&R 13; Leave Appl.)  She explained that under New York law, a party is deemed to have abandoned a claim when it is not raised in the letter seeking leave to the Court of Appeals.  (R&R 13 (citing N.Y. Ct. App. R. 500.11(f)).)  Judge Bloom also noted that "[i]f

---

[5] Judge Bloom also noted that the Trial Court gave a limiting jury instruction regarding the testimony in question.  (R&R 12.)

Petitioner attempted to exhaust his ineffective assistance claim, the state court would dismiss it as procedurally defaulted."  (R&R 13 (citing N.Y. Crim. Proc. Law § 440.10(2)(a), (c)).)

Judge Bloom also considered whether there was a showing of cause and prejudice or actual innocence that would permit review of the procedurally defaulted claim, but found that Petitioner had neither demonstrated the requisite cause and prejudice to overcome the procedural default nor shown that the Court's failure to consider the ineffective assistance claim would result in a miscarriage of justice.  (R&R 13–14.)

In the alternative, Judge Bloom addressed the merits of the claim and concluded that Petitioner could not meet the two-part test for establishing an ineffective assistance of a counsel claim.  (R&R 14.)  Recognizing that "a petitioner 'must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms, and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation,'" (*id.* (citing *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)))), Judge Bloom found that Petitioner had not established that he was prejudiced by Trial Counsel's failure to timely object to the prosecutor's introduction of an uncharged crime through Seaberry's testimony.  (R&R 14.)  Judge Bloom concluded that because Petitioner failed to establish prejudice, even addressing the merits of the claim, "Petitioner's claim that his counsel provided ineffective assistance by failing to contemporaneously object to the introduction of uncharged crime evidence should be denied because the Appellate Division's decision denying that claim was not contrary to or an unreasonable application of clearly established federal law."  (*Id.* at 14–15.)

### iii.  Sentencing claim

Petitioner also reasserted his claim that the Trial Court improperly sentenced him by mistakenly believing that the court did not have discretion and was required to impose

Petitioner's sentence consecutively to an undischarged sentence.  (Pet. 6, 17.)  Petitioner raised this claim before the Appellate Division and was granted the relief sought.  The Appellate Division agreed that the Trial Court erred in imposing Petitioner's sentence since the Trial Court had discretion to determine whether to impose his sentence concurrently with or consecutively to the undischarged sentence.  (App. Div. Decision.)  On remand, exercising its discretion, the Trial Court chose to nevertheless impose Petitioner's sentence consecutively to the undischarged sentence.  (R&R 16.)  Although he did not receive the outcome he might have hoped for, Judge Bloom determined that Petitioner's sentencing claim was moot as he had already obtained the relief sought.  (*Id.* at 15.)

Judge Bloom further explained that even if the claim was not moot, it is not cognizable under federal habeas law as "[h]abeas relief is available only when a sentence imposed falls outside the range prescribed by law," and Petitioner's sentence did not.  (R&R 15 (first citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); then citing *United States v. McLean*, 287 F.3d 127, 136 (2d Cir. 2002); and then citing *Ashby v. Senkowski*, 269 F. Supp. 2d 109, 115 (E.D.N.Y. 2003)).)  Judge Bloom also noted that "there is no constitutionally cognizable right to concurrent, rather than consecutive sentences," (R&R 15 (first citing *McLean*, 287 F.3d at 136; and then citing *Ashby v. Senkowski*, 269 F. Supp. 2d at 115)), and further noted that New York State law allows a Supreme Court Judge the discretion to determine whether a sentence should run concurrently with or consecutively to an undischarged sentence.  (R&R 15 (citing N.Y. Penal Law § 70.25(4)).)  Accordingly, Judge Bloom found that the sentence imposed was within the range prescribed by law, and therefore Petitioner's sentencing claim is not cognizable on federal habeas review.  (R&R 15.)

## II.   Discussion

### a.   Standards of review

#### i.   Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

#### ii.   Habeas

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Shoop v. Hill*, 586 U.S. ---, ---, 139 S. Ct. 504, 406 (Jan. 7, 2019) (per curiam) ("[H]abeas relief may be granted only if the state court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of,' Supreme Court precedent that was clearly established at the time of the adjudication." (citations omitted)); *Kernan v. Hinojosa*, 578 U.S. ---, ---, 136 S. Ct. 1603, 1604 (May 16, 2016) (per curiam); *Hittson v. Chatman*, 576 U.S. 1028, 1028 (2015); *Woods v. Donald*, 575 U.S. 312, 313 (2015) (per curiam); *Johnson v. Williams*, 568 U.S. 289, 292 (2013). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001)); *see also Kernan*, 578 U.S. at ---, 136 S. Ct. at 1606; *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Under the section 2254(d) standards, a state court's decision must stand as long as "'fairminded jurists could disagree' on the correctness of the . . . decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute clearly established [f]ederal law, as determined by the Supreme Court [under] § 2254(d)(1)."); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit

also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision.").  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412–13.  In order to establish that a state court decision is an unreasonable application of federal law, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The decision must be "objectively unreasonable." *Id.*

A court may also grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "[S]tate-court factual determinations [are not] unreasonable 'merely because [a federal post-conviction court] would have reached a different conclusion in the first instance.'"  *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  Rather, factual determinations made by the state court are "presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Even if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to'" overturn a state court factual determination.  *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).  A court may overturn a state court's factual determination only if the record cannot "plausibly be viewed" as consistent with the state court's fact-finding or if "a reasonable factfinder must conclude" that the state court's

decision was inconsistent with the record evidence.  *Rice*, 546 U.S. at 340–41.

     **b.**   **Claims addressed in the R&R**

Petitioner objects to the R&R recommendation that the Court reject his due process, ineffective assistance of Trial Counsel, and sentencing claims "on the grounds of actual innocence."  (Pet'r's Obj.)  Specifically, in his objection Petitioner states "[m]y whole case involves DNA, and before coming to [f]ederal [c]ourt, I wanted to exhaust all my issues in [s]tate [c]ourt."  (*Id.* at 1.)  Petitioner then explains the attachments to his objection including the new claims in a separately attached petition.[6] (*Id.* at 2.)  Because Petitioner's objections to the R&R are conclusory, the Court reviews them for clear error.

An objection is conclusory when it simply states that the magistrate judge's recommendations are "wrong and unjust" or "simply restates the relief sought."  *Scholfield v. Dep't of Corr.*, No. 91-CV-1691, 1994 WL 119740, at *2 (S.D.N.Y. Apr. 6, 1994).  Objections by a *pro se* litigant are held to "less stringent standards than [those] drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

Petitioner's objection is general and conclusory, and fails to make any argument as to why Judge Bloom's recommendations are faulty.  *See Jackson v. Graham*, No. 16-CV-9595, 2019 WL 3817196, at *1 (S.D.N.Y. Aug. 14, 2019) (explaining that a court must liberally construe a *pro se* litigants "papers 'to raise the strongest arguments they suggest'" while not exempting them "from compliance with relevant rules of procedural and substantive law." (quoting *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)) (citing *Carrasco v. United States*, 190 F. Supp. 3d 351, 352 (S.D.N.Y. 2016)).  As such, the Court reviews the objection for

---

     [6] As noted above, the Court separately addresses the new claims raised by Petitioner in the attachment to his objections.

clear error.  *See* 28 U.S.C. § 636(b)(1)(C); *Benitez v. Parmer*, 654 F. App'x 502, 504 (2d Cir. 2016) ("[The petitioner's] general objection was insufficient to obtain de novo review by the district court"); *Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 129 (E.D.N.Y. 2015) ("[I]f a party 'makes only conclusory or general objections. . . the [c]ourt reviews the [r]eport and [r]ecommendation only for clear error.'" (citations omitted)).

Having reviewed the R&R, the Court finds no clear error and adopts the R&R in its entirety pursuant to 28 U.S.C. § 636(b)(1).  The Court therefore considers only the new claims raised by Petitioner in his objections to the R&R.[7]

### c.   Ineffective assistance of Trial Counsel claim

Petitioner's ineffective assistance of Trial Counsel claim asserted in opposition to the R&R is based on four separate grounds: that Trial Counsel failed (i) to object to the introduction of deoxyribonucleic acid ("DNA") evidence, (ii) to present critical DNA evidence, (iii) to object to the admission of two knives into evidence, (iv) to investigate and to object to prosecutorial misconduct during the Assistant District Attorney's ("ADA") summation, and (v) to call an expert witness.  (Obj. Pet.)

"The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 775 (Feb. 22, 2017) (quoting *Strickland*, 466 U.S. at 686); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011).  "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that

---

[7]   As the Court noted above, Petitioner raised in a separate petition several new claims in objecting to the R&R.  Although Respondent argues that the Court should treat these new claims as an attempt by Petitioner to file a successive petition, (Letter dated Apr. 15, 2019., Docket Entry No. 13), because the new claims were filed prior to the Court deciding the petition, the Court rejects Respondent's successive petition argument and construes the new claims as an amendment to the petition.

counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ---, 137 S. Ct. at 775

(citing *Strickland*, 466 U.S. at 687); *see also Sexton v. Beaudreaux*, 585 U.S. ---, ---, 138 S. Ct.

2555, 2558 (June 28, 2018) (per curiam) ("To prove ineffective assistance of counsel, a petitioner

must demonstrate both deficient performance and prejudice.").  "Recognizing the 'tempt[ation]

for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . .

counsel should be 'strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment.'"  *Cullen v. Pinholster*,

563 U.S. 170, 189 (2011) (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90); *see*

*also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland*

standard is "highly deferential" to eliminate the "distorting effects of hindsight" (quoting

*Strickland*, 466 U.S. at 689)).  The "highly deferential" *Strickland* standard is made "doubly so"

on habeas review, as AEDPA requires deference to the state court's ruling.  *Premo*, 562 U.S. at

122; *accord Santone v. Fischer*, 689 F.3d 138, 154 (2d Cir. 2012).  Thus, on habeas review, "the

question is not whether counsel's actions were reasonable . . . [but] whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S.

at 105.  "Surmounting *Strickland*'s high bar is never an easy task."  *Id.* (quoting *Padilla v.*

*Kentucky*, 559 U.S. 356, 371 (2010)).

### i.  Failure of counsel to object to DNA evidence presented by the prosecution

Petitioner's claim that Trial Counsel was ineffective for failing to object to the testimony

of Cindy Rodriguez, the prosecution's expert witness in forensic biology and DNA training, (Tr.

379:21–22; Obj. Pet. 28), is procedurally defaulted.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a

federal habeas court."  *Davila v. Davis*, 582 U.S. ---, ---, 137 S. Ct. 2058, 2064 (June 26, 2017);

*Cullen*, 563 U.S. at 182 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief.").  "This requires that the prisoner 'fairly present' his constitutional claim to the state court, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2015)); *DiSimone v. Phillips*, 461 F.3d 181, 188 (2d Cir. 2006) (noting that a federal habeas petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)); *see also Harris v. Fischer*, 438 F. App'x 11, 13 (2d Cir. 2011) ("[E]ach argument advanced in a federal habeas petition must first have been exhausted through state remedies — that is, presented to the state's highest court." (citing 28 U.S.C. § 2254(b)–(c))).  To prevent a habeas petitioner from exhausting his claims by simply letting the time run on state remedies, the Supreme Court "crafted a separate waiver rule — or as it is now commonly known — the procedural default doctrine." *Jimenez v. Walker*, 458 F.3d 130, 148 (2d Cir. 2006) (quoting *O'Sullivan*, 526 U.S. at 853 (Stevens, J., dissenting)).  Under the procedural-default doctrine, "when a prisoner has exhausted his state remedies but has not given the state courts a fair opportunity to pass on his federal claims," the prisoner has procedurally defaulted his claims and is ineligible for habeas relief "absent a showing of 'cause and prejudice' or 'a fundamental miscarriage of justice.'"  *Id.* (quoting *O'Sullivan*, 526 U.S. at 854).

Petitioner did not fairly present his claim to the state courts as required by the Supreme Court and the Second Circuit and no longer has a state court avenue through which to pursue this

claim as he has already used the one direct appeal to which he is entitled under New York law. *See* New York Ct. Rules § 500.20; *Harris v. Fischer*, 438 F. App'x at 13.

Nor can Petitioner seek collateral review by bringing a second section 440.10 motion, as his ineffective assistance of Trial Counsel claim is a matter of record that could have been raised on direct appeal. While New York State law provides for collateral review of a conviction under Criminal Procedure Law § 440.10, such review is not available if the claim could have been raised on direct review. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (providing that the court must deny a motion to vacate a judgment when sufficient facts appear on the record to have permitted adequate review of the issue on appeal and the petitioner unjustifiably failed to raise the issue on direct review); *see also Jackson*, 763 F.3d at 143–44 (holding that a petitioner's claim was unexhausted and procedurally defaulted because the claim could have been raised on direct appeal (citing § 440.10(2))); *Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991) (holding claim to be procedurally defaulted where petitioner no longer had "remedies available" in the New York state courts).

Because this claim is procedurally defaulted and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice, Petitioner is not entitled to relief on this claim.

### ii.   Trial Counsel's failure to present DNA evidence critical to the defense

Petitioner claims that Trial Counsel's failure to investigate and test the hair found in Mendoza's hand, which Petitioner argues would have directly implicated either Williams or Seaberry, and Trial Counsel's failure to present this evidence at trial prejudiced him by depriving him of a fair trial. (Obj. Pet. 16.) In the Section 440 Decision, the Trial Court found that Petitioner did not demonstrate "an absence of strategy or other legitimate explanation for

counsel's failure to test the hair."[8]  (Section 440 Decision 6.)  Because the state court's decision neither contradicts nor unreasonably applies clearly established Supreme Court precedent, the Court denies habeas relief as to this claim.

In order to prevail on an ineffective assistance claim based on a trial counsel's failure to present DNA evidence, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101(1955)).  The decision of whether or not to obtain DNA testing is a matter of strategic choice to be made by trial counsel depending on the circumstances.  *See Dearstyne v. Mazzuca*, 48 F. Supp. 3d 222, 268 (N.D.N.Y. 2011) ("Under the circumstances of this case, the [c]ourt concludes that trial counsel's strategic choice not to obtain DNA testing did not constitute a professionally unreasonable decision so as to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel.").

In the Section 440 Decision, the court noted that as argued by the prosecution, Trial Counsel could have legitimately determined that by having the hair tested, "a DNA match of the hair to [Petitioner] would have further incriminated [Petitioner] while a non-match would not have exonerated [Petitioner]."  (Section 440 Decision 7); *see also Manino v. Artus*, No. 06-CV-3078, 2009 WL 1117301, at *18 (E.D.N.Y. Apr. 24, 2009) (finding that the petitioner failed to demonstrate ineffective assistance of counsel because trial counsel's decision not to test evidence for "DNA was reasonable in light of the other evidence tending to identify [the petitioner] as [the victim's] assailant" since "the results may have further incriminated [the petitioner]").  Thus,

---

[8]  On September 24, 2014, Petitioner filed for leave to appeal the 440 Decision to the Appellate Division.  (Section 440 Leave Appl.)  On February 25, 2015, the Appellate Division denied leave to appeal the Section 440 Decision.  *People v. Rios*, 2015 N.Y. slip op. 64966, 2015 WL 777350.

Petitioner has not presented evidence or argument to demonstrate that Trial Counsel did not act strategically.

Nor has he demonstrated that the failure to introduce this DNA evidence was prejudicial in light of the other evidence presented at trial. In addition to the evidence of Petitioner's DNA on the handle of a knife with the victim's blood, the prosecution presented two eyewitnesses who identified Petitioner as the perpetrator. (440 Decision 7; Tr. at 153:19–22, 324:23–24); *see Perez v. Warden*, No. 16-CV-08251, 2018 WL 3421383, at *8 (S.D.N.Y. Jan. 8, 2018) ("[E]ven supposing that trial counsel's strategic decision not to introduce the available DNA evidence fell below an objective standard of reasonableness, the [c]ourt is not persuaded that the failure would have prejudiced [petitioner] given the totality of the evidence introduced at trial.").

Accordingly, Petitioner is not entitled to habeas relief on this ground.

### iii. Trial Counsel's failure to object to the admission of two knives into evidence

Petitioner claims that Trial Counsel was ineffective for failing to object to the admission of two knives found at the scene and for challenging the chain of custody because the lead detective testified to seeing a knife with a broken handle and neither of the two knives admitted into evidence had a broken handle. (Obj. Pet. 18.)

In his 440 Motion, Petitioner argued that the chain of custody was broken because Officer Christian Rosado, who was identified as the person to voucher the knives, never testified. (440 Mot. 7, annexed to Pet'r's Obj. as Ex. 4, Docket Entry No. 12.) Petitioner explains that Detective Markoski testified that he gave the knives to Officer Rosado to voucher and to obtain fingerprint testing and DNA testing, but that the record does not explain or clarify Officer Rosado's role in collecting the evidence. (*Id.*) In the 440 Decision, the court explained that Petitioner "failed to establish that there was a legal basis for a successful objection to have been

22

made."  (440 Decision 8 (citing *People v. Caban*, 5 N.Y.3d 143, 152 (2005) (explaining that there can be no denial of effective assistance for failure to make a motion or argument that has little to no chance of success)).)  The court explained that Detective Markoski took photographs of the knives inside the sink and, when the knives were being introduced into evidence, testified that he recognized the knives as those he recovered from the kitchen sink.  (Section 440 Decision 8. (citing *People v. Matos*, 908 N.Y.S.2d 672 (App. Div. 2010)) (finding sufficient foundation for admission of a knife into evidence based on testimony of the officer that the knife was the same knife he recovered from the defendant and was in the same condition as when he recovered it).) The court further held that Petitioner's claim that the knives should not have been admitted into evidence because of chain of custody issues was precluded because he failed to raise the issue on appeal.  (Section 440 Decision 9 (citing C.P.L. 44.10 (2)(c)).)

### 1.   Chain of custody

Petitioner's chain of custody claim is procedurally barred because the 440 Decision declined to address Petitioner's claims based on his failure to meet a state procedural requirement, and the decision rests on an independent and adequate state procedural ground.  The 440 Decision explains that the absence of the testimony of "the police officer who vouchered the two sealed boxes containing the knives . . . was on the record and . . . could have been raised on appeal."  (440 Decision 9.)  As Judge Bloom explained in the R&R, an independent and adequate state procedural bar precludes federal habeas review of a claim.[9]  (R&R 11.)  The state court

---

[9]  "A procedural default occurs in one of two ways.  First, if the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule . . . [a]lternatively, a procedural default occurs if the state court's rejection of a federal claim rests on a state law ground."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014); *see also Walker v. Martin*, 562 U.S. 307, 316 (2011) ("[F]ederal habeas relief will be

found that Petitioner's claim was barred from review pursuant to C.P.L. § 440.10(2)(c), an adequate state procedural rule, because he should have but unjustifiably failed to raise the claim on direct appeal.  *See* C.P.L. § 440.10(2)(c) (providing that the court must deny a motion to vacate a judgment when sufficient facts appear on the record to have permitted adequate review of the issue on appeal and the petitioner unjustifiably failed to raise the issue on direct review); *see also Jackson*, 763 F.3d at 143–44 (holding that a petitioner's claim was procedurally defaulted because the claim could have been raised on direct appeal (citing § 440.10(2))); *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (holding that a petitioner's ineffective assistance of counsel claim procedurally defaulted where appellate counsel failed to argue it on direct appeal despite a sufficient record, therefore waiving the claim under § 440.10(2)(c)); *Grey*, 933 F.2d at 120–21 (holding claim to be procedurally defaulted where petitioner no longer had "remedies available" in the New York state courts).  Accordingly, the Court finds the chain of custody claim procedurally barred.

## 2.  Ineffective assistance of Trial Counsel

Petitioner also fails to demonstrate that the state court erred in its application of federal law in determining that Trial Counsel was not ineffective for failing to object to the admission of the two knives in evidence.

---

unavailable when (1) a state court has declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement and (2) the state judgment rests on independent and adequate state procedural grounds.") (alteration and citations omitted); *Davila v. Davis*, --- U.S. ---, ---, 137 S. Ct. 2058, 2064 (June 26, 2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court.").  "State rules count as 'adequate' if they are 'firmly established and regularly followed.'" *Johnson v. Lee*, 578 U.S. ---, ---, 136 S. Ct. 1802, 1803 (May 31, 2016) (per curiam) (quoting *Walker v. Martin*, 562 U.S. at 316); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999))).

A lawyer's tactical decisions are given great deference in the face of an ineffective assistance of counsel claim.  *See Strickland*, 466 U.S. at 690 ("Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement."); *see also Woods v. Etherton*, 578 U.S. ---, ---, 136 S. Ct. 1149, 1151 (Apr. 4, 2016) (per curiam) ("[F]ederal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" (quoting *Burt v. Titlow*, 571 U.S. ---, ---, 134 S.Ct. 10, 17 (2013)).

Trial Counsel chose not to object to the admission of evidence where such an objection would likely have been deemed frivolous under the circumstances, given that Detective Markowski identified the knives as those depicted in crime scene photographs and as being in the same or substantially the same condition as when he recovered them from the scene — satisfying the foundational requirements for admission under New York Law.  (Tr. 63:11–67:7; 440 Decision 8.)  Based on these facts, which fail to demonstrate that Trial Counsel performed deficiently, Petitioner has not met the first prong of *Strickland*, 466 U.S. at 687, and therefore Trial Counsel's action does not constitute ineffective assistance of counsel.  *See Adams v. Keyser* No. 16-CV-129, 2018 WL 2089337, at *6 (S.D.N.Y. May 3, 2018) (finding that trial counsel was not ineffective for failing to challenge expert testimony and forensic evidence because the decision not to pursue a meritless motion does not make counsel ineffective and "any alleged defects in the [evidence's] chain of custody went to the weight of the evidence rather than its admissibility")

Accordingly, the Court declines to grant habeas relief on this claim.

### iv.   Trial Counsel's failure to object to prosecutorial misconduct during the ADA's summation

Petitioner argues that Trial Counsel was ineffective for failing to object to the prosecution's summation when the ADA improperly vouched for the credibility of prosecution witnesses and played on the juror's sympathy.  (Obj. Pet. 24–25.)  Because Petitioner failed to raise this claim on direct appeal and because, in issuing the 440 Decision, the court found that he should have done so, the Court finds that this claim is procedurally barred.

In the 440 Decision, the court found that "[s]ufficient facts appear on the record to have permitted adequate review of this claim on direct appeal but no such appellate review occurred owing to [Petitioner's] unjustifiable failure to raise the claim on direct appeal."  (Section 440 Decision 12 (citing C.P.L. 440.10 (2)(c)).)  In the alternative, the court addressed the claim on the merits, finding that "the prosecutor's summation was not improper and therefore, Trial Counsel's failure to object did not constitute ineffective assistance of counsel."  (*Id.*)

For the reasons discussed above, the Court finds that C.P.L. 440.10 (2)(c) is an independent and adequate state rule.  Even though the 440 Decision addressed the merits in the alternative, the claim is nevertheless procedurally barred.  *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (noting that even "when a state court has expressly relied on a procedural default as an independent and adequate state ground" the federal court is barred from reaching the merits of the claim "even where the state court has also ruled in the alternative on the merits of the federal claim").

The Court therefore denies habeas relief on this claim.

### v.   Trial Counsel's failure to call an expert witness

Petitioner argues that while Trial Counsel cross examined prosecution expert witnesses, he was ineffective for not calling an expert witness in blood splatter and defense wounds.  (Obj.

Pet. 29–30.)  In the Section 440 Decision, the court explained that Petitioner "has not shown that an expert was available who would have testified that the blood splatter on the wall was made by a mop" and that "[t]he cause of the splatter on the wall was insignificant when viewed in the context of two witnesses identifying the [Petitioner] as the one who stabbed Mendoza."  (440 Decision 10.)  The court also concluded in the Section 440 Decision that Petitioner "failed to establish that his attorney should have called or consulted with an expert on defensive wounds." (*Id.*)  The state court's decision is not contrary to or an unreasonable application of federal constitutional law.

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).  "[T]he tactical decision of whether to call specific witnesses — even ones that might offer exculpatory evidence — is ordinarily not viewed as a lapse in professional presentation."  *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). In addition,

> [a]lthough a failure to seek an expert would constitute objectively substandard performance if the attorney believed expert assistance was necessary but failed to hire an expert because he was inexcusably unaware of a law that permitted him to request appropriate funds to do so, the failure to seek an expert does not satisfy the performance prong of *Strickland* where counsel chooses a strategy that does not require an expert.

*Swaby v. New York*, 613 F. App'x 48, 50 (2d Cir. 2015) (citation omitted).  "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Richter*, 562 U.S. at 111.

Petitioner believes that Trial Counsel's cross examination of prosecution witnesses about the blood splatter analysis and defensive wounds were not sufficient and that the outcome of his case would have been different had Trial Counsel called his own expert.  (Obj. Pet. 29–30.)

Petitioner presents no evidence to support this conclusion.  Moreover, the record suggests that Trial Counsel employed reasonable strategy in choosing to cross examine prosecution witnesses rather than call a defense expert whose testimony about blood splatter and defense wounds would likely not have overcome the testimony of two eyewitnesses.  *See Hamilton v. Lee*, 94 F. Supp. 3d 460, 479 (E.D.N.Y. 2015) (finding no ineffective assistance of counsel for failing to call an expert witness where trial counsel "adequately challenged the prosecution's [expert witness] on cross-examination and in his summation").

The Court denies habeas relief on this claim.

### d.    The denial of Petitioner's request for DNA testing

Petitioner claims that the state court abused its discretion when it denied his 440 Motion seeking to conduct post-conviction DNA testing of DNA evidence recovered at the scene and not presented at trial.  (Obj. Pet. 13.)

In denying the request, the court stated that such testing, even if favorable to the Petitioner, "would not have established a reasonable probability that the verdict would have been more favorable to" Petitioner.  (440 Decision 22.)  The court also explained that the request for retesting was denied in part because the property was inaccessible, but even if the property was available, Petitioner "has not shown the original testing is flawed."  (*Id.*)

Petitioner cites no law and makes no argument that he has a federal right to post-conviction DNA testing.  Instead, he argues that the DNA evidence was exculpatory and that the prosecution failed to comply with its duty to disclose exculpatory evidence pursuant to *Brady v. Maryland*. (Obj. Pet. 20.)  However, there is nothing in the record or in the petition to suggest that the evidence Petitioner seeks to have tested was not disclosed to him before trial.  In fact, the hair that Petitioner wanted tested was disclosed to Trial Counsel almost two years before trial (Sen'g Tr. 3:9–4:13.)  Therefore, there is no *Brady* violation.  *See Brady v. Maryland*, 373 U.S.

83, 86 (1963).

Accordingly, the Court denies habeas relief on this claim.

### e.   Ineffective assistance of appellate counsel

Petitioner claims that appellate counsel was ineffective for choosing to raise weak issues on direct appeal while failing to raise meritorious issues.  (Obj. Pet. 31.)  Specifically, Petitioner contends that appellate counsel abandoned the ineffective assistance of Trial Counsel claim in the leave application to the Court of Appeals, rendering it procedurally barred.  (*Id.* at 31–32.) Petitioner also claims that appellate counsel erred in not raising on appeal Trial Counsel's failure to introduce physical DNA evidence at trial.  (*Id.* at 33.)

### i.   Independent ineffective assistance of counsel claim

To the extent Petitioner is raising an independent ineffective assistance of appellate counsel claim, such a claim is without merit.

While an error by post-conviction counsel may in some cases supply the necessary "cause" to overcome a procedural default, Petitioner cannot assert a separate claim for ineffective assistance of post-conviction counsel because "a prisoner does not have a constitutional right to counsel in state postconviction proceedings."  *Davila*, 582 U.S. at ---, 137 S. Ct. at 2062 (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).  Under 28 U.S.C. § 2254, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i); *Martel v. Clair*, 565 U.S. 648, 666 n.3 (2012).  Accordingly, Petitioner is not entitled to habeas relief based on his ineffective assistance of appellate counsel claim.

### ii. Cause

While it appears that Petitioner is raising an ineffective assistance of appellate counsel claim as a seperate claim, the Court nevertheless considers whether any errors allegedly committed by appellate counsel constitutes cause to overcome a procedural default.

"There is no doubt that ineffective assistance of counsel can serve as cause to excuse procedural default." *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000)). Indeed,

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 566 U.S. 1, 17 (2012). To establish cause, "the [petitioner] must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila*, 137 S. Ct. at 2065 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("Cause for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" (quoting *Murray*, 477 U.S. at 478) (alteration in original)); *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) ("[T]he cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule."). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument . . . a petitioner may establish constitutionally inadequate performance if he shows that counsel

omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Court finds that appellate counsel's performance was not so ineffective as to violate the Federal Constitution. On direct appeal, appellate counsel raised three issues: (1) the Trial Court violated Petitioner's right to due process by admitting evidence of an uncharged crime he allegedly committed, (2) Trial Counsel was ineffective for failing to preserve that due process argument, and (3) the Trial Court erred when it imposed Petitioner's sentence consecutively to a prior undischarged sentence due to a misapprehension that the penal law mandated consecutive sentencing. (Pet'r's App. Br.) While the first two claims were denied, the Appellate Division granted the third and the case was remanded for resentencing. (App. Div. Decision)

Petitioner now argues that "[a] reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief." (Obj. Pet. 31.) Appellate counsel did raise the sentencing issue and the court agreed. (App. Div. Decision.) Furthermore, the Court will not second guess the reasonable professional judgement of appellate counsel to raise the due process claim and not the related ineffective assistance of counsel claim when seeking review by the Court of Appeals. *See Waiters v. United States*, No. 10-CR-00087, 2020 WL 3960511, at *5 (E.D.N.Y. July 13, 2020) (finding that petitioner could not establish that there were significant and obvious issues for appeal because the claims had "no merit[] and appellate counsel reasonably focused on issues that had a better chance of success — a decision a court should not second guess") Petitioner has failed to demonstrate that ineffective assistance of appellate counsel caused his procedural default of his ineffective assistance of Trial Counsel claims.

### iii. Fundamental miscarriage of justice

Petitioner contends that there will be a fundamental miscarriage of justice if his claims are not reviewed because of procedural obstacles. (Obj. Pet. 35.)

31

A showing of actual innocence serves merely as a gateway to the airing of a petitioner's procedurally defaulted claims and is not itself cognizable as a free-standing basis for relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012) ("[A] petitioner seeking access to a federal habeas court in the face of a procedural obstacle must advance both a legitimate constitutional claim and a credible and compelling claim of actual innocence.") A habeas court is, in short, concerned "not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved." *Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923).

"[The] fundamental miscarriage of justice exception[] is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). "Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (alterations omitted). A fundamental miscarriage of justice arises when a petitioner "is actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)); *see also Retke v. Haley*, 541 U.S. 386, 393 (2004) (explaining that *Murray v. Carrier*, 477 U.S. 478 (1986) recognized a narrow exception to the cause requirement where a constitutional violation led to the conviction of a [p]etitioner who is actually innocent).

"The Supreme Court has explained that the fundamental miscarriage of justice exception is 'extremely rare' and should be applied in 'the extraordinary cases.'" *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (quoting *Schlup v. Delo*, 513 U.S. 298, 321–22 (1995); *Murray*, 477 U.S. at 496 ("In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").  "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 298).

Although Petitioner maintains his innocence and claims that if "forensic DNA evidence [had] been presented in [P]etitioner's trial, no reasonable juror would have found [P]etitioner guilty beyond a reasonable doubt," he has not overcome the high burden imposed by the miscarriage of justice standard.  (Obj. Pet. 36.)  There was sufficient evidence of Petitioner's guilt presented at trial in the form of two eye witnesses and DNA evidence such that even if DNA testing of the hair in Mendoza's hand determined that it belonged to someone other than Petitioner, a jury still could have rationally found Petitioner guilty.  *See Gupta v. United States*, 913 F.3d 81, 88 (2d Cir. 2019) (holding that a claim of actual innocence and therefore miscarriage of justice failed where, on the record as a whole, the jury could rationally have found the petitioner guilty); *Fernandez v. United States*, 757 F. App'x 52, 55–56 (2d Cir.  2018) (holding that the petitioner did not demonstrate actual innocence by claiming the witnesses who testified against him were not credible since "the jury was entitled to credit the witnesses who testified" and petitioner failed to support his actual innocence argument with sufficient evidence)

Accordingly, Petitioner has failed to demonstrate a fundamental miscarriage of justice.

> **f.   Discovery request**

Finally, Petitioner requests "all discovery pertaining to [Habeas] Rule 6, that is in the prosecution's possession."  (Obj. Pet. 36.)

A habeas petitioner is "not entitled to discovery as a matter of ordinary course."  *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003); *see also Cullen*, 563 U.S. at 181 (holding that habeas review is "limited to the record that was before the state court that adjudicated the claim on the merits").  A district court, in its discretion, may supplement the record in a habeas case in lieu of conducting a full evidentiary hearing.  *See generally Valverde v. Stinson*, 224 F.3d 129, 135 (2d Cir. 2000) ("[T]he district court, in its discretion, may utilize any of the habeas rules designed to supplement the record without the necessity of conducting a full-blown evidentiary hearing" (quoting *United States v. Aiello*, 814 F.2d 109, 114 (2d Cir. 1987)); *see also* Habeas Rule 7(a) ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition.").  Pursuant to Habeas Rule 6, a court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure," but a "party requesting discovery must provide reasons for the request."  Habeas Rule 6.  "[D]iscovery is only allowed if the district court, acting in its discretion, finds 'good cause' to allow it."  *Beatty v. Greiner*, 50 F. App'x 494, 496 (2d Cir. 2002); *see also Rippo v. Baker*, 580 U.S. ---, ---, 137 S. Ct. 905, 906 (Mar. 6, 2017) (per curiam) ("[P]etitioner was entitled to discovery because he had also alleged specific facts suggesting that" his claim was meritorious); *Batista v. United States*, 792 F. App'x 134, 136 (2d Cir. 2020) (finding that petitioner "was not entitled to further (or broader) discovery, as 'the scope and extent of Section 2255 discovery is a matter confided to the discretion of the District Court'" (quoting *Bracy v. Gramley*, 520 U.S. 899, 909 (1997))); *Drake*, 321 F.3d at 346 ("[A] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.").

The "'good cause' standard is satisfied where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed be able to demonstrate that he is entitled to relief." *Ferranti v. United States*, 480 F. App'x 634, 638 (2d Cir. 2012) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) ("Generalized statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite 'good cause.'").

Petitioner has not shown good cause to obtain discovery under Habeas Rule 6. Petitioner challenges the state court's determination that he is not entitled to forensic DNA testing. (Obj. Pet. 36.) He now seeks all discovery including review of the log book of the lead detective on the case, James Bodner, and examination of all crime scene photographs, and hopes to show that prosecution witnesses made deals with the prosecution that were not disclosed. (*Id.*) Petitioner believes that in doing so, he will be able to demonstrate his actual innocence. (*Id.*)

The possibility that the material Petitioner seeks will reveal information he desires is too general a request and therefore inadequate to establish that he is entitled to relief. *See Hammond v. United States*, No. 16-CV-00620, 2018 WL 2376319, at *10 (D. Conn. May 24, 2018) (concluding that because the petitioner did not raise "allegations that, with factual development of his claims, could plausibly establish that he is entitled to relief, his request for discovery is denied"); *Beecham v. Lavalley*, No. 12–CV–0822, 2013 WL 3243631, at *4 (E.D.N.Y. June 26, 2013) (deciding that Petitioner's request for discovery to "reveal grounds for relief that [p]etitioner was not aware of" is "a fishing expedition [that] does not constitute good cause" and accordingly denying [p]etitioner's request for discovery").

### III.  Conclusion

For the foregoing reasons, the Court adopts the R&R and denies the amended petition for a writ of habeas corpus. The Court will not issue a certificate of appealability as Petitioner has

not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good

faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal.  *See Coppedge v.

United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to enter judgment

and close this case.

Dated:  September 24, 2020
       Brooklyn, New York

                         SO ORDERED:

                              s/ MKB
                         MARGO K. BRODIE
                         United States District Judge